THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SAÚL ANÍBAL COMAS SOSA, Defendant and Appellant.

No. Cr-62–197.     Decided March 11, 1963.

*Benjamín Ortiz* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM.

Appellant was found guilty of violating Art. VIII of the Vehicle and Traffic Law of Puerto Rico (Act No. 141 of July 20, 1960, Sess. Laws, p. 408), consisting in that "under the influence of intoxicating liquor he was driving a motor vehicle . . . causing it collide against another vehicle," and he was sentenced to serve three months' imprisonment in jail and his driver's license was suspended for a period of two years. In this petition for appeal he alleges (1) that the judgment is not supported by the evidence introduced and that the evidence shows that defendant was not in a state of intoxication when driving the vehicle, and (2) that defendant was deprived of his constitutional rights by compelling him to submit to a chemical analysis.

■ The prosecution evidence was to the effect that on the day of the occurrence Ricardo Rodríguez was driving the automobile of José López Vélez who was seated next to him; that as they drew near the town of Cabo Rojo an oncoming automobile was running at excessive speed and zigzagging; that Rodríguez stopped his automobile and the other automobile driven by defendant collided with him; that defendant smelled of liquor; could hardly talk and if he did he was not understood, and could not hold himself up. The police arrived at the scene of the accident and Lieutenant Hernández ordered that a blood sample be taken from defendant. Doctor Miguel Ángel Lassalle was called from the hospital to attend defendant. He testified that defendant was bleeding by the nose and was in a state of anxiety and nervousness; he seemed quite excited and presented a severe contusion on the nasal region with abundant blood. De-

fendant was not lying down; it was difficult to take the blood sample because he offered resistance. The doctor was under the impression that he was drunk.

The result of the blood analysis made by the Department of Health was 0.19 per cent grams of alcohol in 100 grams of blood. In view of the fact that the result of the analysis made by defendant was different, a third verification analysis was made, the result of which was 0.13 per cent of alcohol, or six milligrams less. The first analysis was made on March 1, 1961 and the verification analysis on September 5 of that year. Chemist Pedro A. Sierra testified that the reason why the result of an analysis may be higher is generally that there has been contamination in the taking of the sample, in the brakes, in the condensation of the still, and also the time factor; that a person with a percentage of 0.13 may be in a state of intoxication while with 0.20 per cent he may be sober, depending on a set of circumstances, and that the witnesses who saw him and the attending physician are in a better position to say whether or not defendant was in a state of intoxication.

The defense evidence was to the effect that defendant stopped working that day after having lunch because it was a holiday. His father testified that he saw his son (the defendant) entering the hospital and that he did not notice any abnormality except some contusions and some blood. A mechanic testified that he went to tow defendant's automobile and noticed that the pivot was broken, a defect which affects the directional functioning of the vehicle. Another witness testified for the defense that defendant was driving at moderate speed; that the vehicle "apparently went out of control and collided with the oncoming car"; that he did not notice any abnormality in defendant and that the latter was sober when he came out of the car.

In resolving the conflict in the evidence the trial judge gave credit to the prosecution evidence. We fail to see how

we can accept defendant's assertion in the sense that the prosecution evidence is insufficient to establish his guilt.

Defendant's argument that his apparent condition, as described by the prosecution evidence, was due to the contusions received by him is in open conflict with what defendant himself attempted to prove, namely, that he was normal, and that it was not noticeable, as established by the prosecution evidence, that he talked without being understood, nor that he could not hold himself up. The intimation that the automobile zigzagged as a result of the breakage of the pivot is not convincing either, since the defense evidence does not show whether the pivot broke as a result of the collision or whether it was broken already. The result of the verification analysis does not establish defendant's innocence either. It rather tends to show his guilt when considered jointly with the rest of the evidence. See *People* v. *Superior Court*, 84 P.R.R. 378 (1962).

■■ The second assignment of error is without merit. The fact that defendant was allegedly compelled to submit to a chemical analysis is immaterial in this case for the purposes of passing upon his innocence or guilt. It was the defense attorney who asked which one of the tests was going to be presented in evidence, and when the judge answered that the verification test was the analysis admissible in evidence, the attorney said that he admitted the result of that analysis, and when the chemist who made the analysis testified, defendant did not object. However, even if the chemist's testimony were eliminated, there was sufficient evidence to support the judgment appealed from.

The judgment will be affirmed.